UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JOSEPH NOBILE,

        Plaintiff

v.

PRUDENTIAL FINANCIAL COMPANIES
and THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendants.

Civil Action No. 07-cv-1541 (HAA)

PLAINTIFFS STATEMENT OF
UNDISPUTED FACTS

Filed Electronically

---

Pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Court for the District of New Jersey, plaintiff, Joseph Nobile ("Nobile"), makes the following statement of undisputed material facts in support of his cross-motion for summary judgment and in opposition to defendant's motion for summary judgment.

### A. PRUDENTIAL'S STATEMENT OF UNDISPUTED FACTS

1. Plaintiff does not dispute the facts set forth in paragraphs 1-16, 19, 22, 26-27, 29, 30 and 36 of Prudential's Statement.

2. In paragraph 17, Prudential states that it reversed its first denial "primarily because Nobile's position at Smith Industries required a significant amount of travel." This statement is not supported by the record. Prudential's attorney has provided the Court with the complete administrative record. (Bates stamp numbers 1-1067).

3. In Paragraph 18, Prudential selects a portion of Nobile's response to a questionnaire of activities of daily living dated March 10, 2005. Nobile also stated that there is no change in his symptoms for angina and fibromyalgia, that he does not do housework, including landscaping and

repairs, because of his angina from heart disease, and that he cannot have physical exertion. In response to the question as to whether Nobile believes he will be able to return to work, he states: "Angina prevents me from dealing with stress. Also pain from FM and wound pain severely limit my completing tasks. I need another bypass, but doctors will not prescribe due to complications from my first bypass." (Bates stamp numbers 608-622)

4. In paragraph 20, Prudential references the letter of its disability consultant, Lorraine Eaton, dated May 13, 2005 wherein Prudential continued Nobile's disability benefits under the "any gainful occupation for which you are reasonably fitted by education, training or experience." Specifically, Ms. Eaton's letter states:

> "We have determined that you will meet the requirements for eligibility for benefits under this definition of disability due to your cardiac ischemia. We have determined that you are Disabled as required. Benefits will continue provided that you remain totally disabled under the terms of Smith's Group North America, Incorporated Group LTD Policy. We are currently in the process of obtaining an update from your cardiologist as to the treatment of the ischemia from your cardiac condition. We will continue to periodically contact you and your attending physician for updated medical information to determine whether you continue to satisfy the requirements of the Group Policy." (Bates stamp numbers 1034-1035)

5. In paragraph 21, Prudential references a section of Dr. Goodman's response to a work status form faxed to Dr. Goodman on May 27, 2005. Dr. Goodman returned this form to Prudential on May 31, 2005. In response to Nobile's treatment plan, Dr. Goodman states "risk factor modification, anti-ischemic meds." He also states that the stress test shows abnormal showing ischemia. (Bates stamp numbers 475-477).

6. In paragraph 23, Prudential accuses Nobile of "falsely stating that he lives in constant pain and fatigue from angina." Nobile stated in his letter of June 13, 2005: "I live in constant pain and fatigue from angina and the other issues from my failed bypass. These conditions keep me from

living normally." (Bates stamp numbers 459-462) Prudential offered no proof that these statements are false.

7. In paragraph 24, Prudential references its denial letter of June 15, 2005 and comments that Nobile's initial application was granted because of his cardiac condition and work duties (in particular the need for business travel). Ms. Eaton's letter of May 13, 2005 does not state that the determination was based on business travel. (Bates stamp numbers 1022-1026; 1034-1035)

8. In Paragraph 25, Prudential again references Ms. Eaton's letter and a review of all information including medical records. First, this letter was written within one month of the prior approval of disability benefits. Second, the letter is clear that the only additional records relied on by Prudential for its reversal of benefits is a cardiac stress test in May, 2005, which was abnormal, and Dr. Goodman's completed work status form.

9. In paragraph 28, Prudential accuses Dr. Goodman of retracting his prior statements in the work status form. Dr. Goodman does not state that he is retracting his statements. Rather, Dr. Goodman states that Nobile has severe and disabling angina pectoris, with a long and very complicated cardiac history. Dr. Goodman details his treatment and surgical procedures. Dr. Goodman stated:

> "My only communication from Prudential Insurance Company was a questionnaire. The questionnaire, which I did complete, included a work status form. Unfortunately the work status form appeared not to direct itself to a real life situation, as it did not query anything about the effect of factors such as time pressures entailed in carry out a job, stress related to managing people in the workplace, difficulties with deadlines, etc. In responding to the work status form, I responded only in terms of his cardiac situation. I did not try to take into account the patient's fibromyalgia symptoms, as I do not consider myself an expert in this area.
>
> It is clear that in most positions of employment, especially for any type of managerial situation, work stress test is more related to emotional stress than physical stress. It

3

is clear from the objective evaluation of the patient's condition, as documented on his stress test that revealed ischemia at a less than target heart rate, that the patient would be particularly susceptible to time and emotional stressors in the workplace. This issue was never raised in the questionnaire that Prudential requested me to complete. In addition, I am sure that the patient's fibromyalgia, in causing discomfort and activity limitations, would only exacerbated the stress on his heart and therefore, lower the anginal threshold causing him more marked limitations resulting in an inability to perform activities and complete responsibilities based on his cardiac problem.

In the forms, which I filled out for Prudential, I also noted that the patient would not have follow-up studies to determine the cause of ischemia. This is because the underlying cause of ischemia was already clearly defined. Therefore, he not only did not require invasive therapy at the time I responded to Prudential, it was clear that invasive treatment could not help him. Therefore, he was maximally medicated for the ischemia and, in spite of the maximum medication, he was continued to be disabled by angina.

In summary, it is clear that Mr. Nobile is currently totally and permanently disabled for working in an environment, which involves any stress. For the patient, this would include not only physical stress test, but also any emotional or mental stress. As noted above, it was clearly documented that Mr. Nobile has inducible ischemia at sub-target heart rates indicating the significance of the known obstructed coronary arteries and coronary bypasses. Also, I do not see any fundamental change that will occur in the patient's condition in the future that will change his condition significantly, therefore, I would regard him as totally and permanently disabled for work in any type of work." (Bates stamp numbers 164-166)

10. In Paragraphs 31-34, Prudential states that it sent Nobile's file to two separate specialists, Dr. Friedman and Dr. Lumpkins. Prudential actually wrote to Reed Review Services. Drs. Lumpkins and Dr. Friedman appear to be affiliated with this service. Prudential wrote two (2) letters seeking a cardiology review (January 20, 2006 and February 6, 2006), and two (2) letters seeking a rheumotology review (January 20, 2006 and February 6, 2006). In both instances, the February 6th letters appear to be clarifications of the brief claim summary set forth in the January 20, 2006 letters. (Bates stamp numbers 962-970) Specifically, the February 6th letters offer a two (2) sentence synopsis of Mr. Nobile's medical condition and then states the Prudential has determined that Mr.

4

Nobile no longer meets the definition of disability from "any gainful occupation." Prudential's letters did not provide the policy definition of gainful employment. The letters do not indicate what documents, if any, were forwarded by Prudential. In reviewing the reports furnished by Reed Review Services, it appears that a series of medical records were furnished for a rheumotology review; however, with respect to the cardiology review, it does not appear that any of Mr. Nobile's cardiology records with the exception of the cath report and nuclear stress report, were provided for review. (Bates stamp numbers 54-70) Reed Services is asked for the rheumotology physician to respond to the following:

> 1. Based on the documentation reviewed, does Mr. Nobile have functional impairments(s) from 7/1/05 forward? If so, please note the functional impairment(s) and the evidence supporting your opinion.
>
> 2. Please identify appropriate restrictions and/or limitations (e.g. sit, stand, walk, reach, lift, carry, perform repetitive and fine motor hand activities. etc.), based on the functional impairment(s) you have noted above. Please also note the duration of any applicable restrictions and/or limitations (e.g. temporary or permanent) and the evidence supporting your opinion if not elsewhere documented.
>
> 3. If medical records are indicating significant impairment, please comment on expected treatment, duration and prognosis. (Is improvement likely?)
>
> 4. Is Mr. Nobile's self-reported functional impairment(s) and level of chronic pain consistent with his level of activity as demonstrated in the attached surveillance report and CD-rom? Please provide a detailed explanation supporting your opinion.
>
> 5. If you opine that the claimant is not functionally impaired, please provide a detailed explanation supporting your opinion.

In addition to these questions. Prudential asks the cardiology physician to respond to an additional question:

> 1. Do the records support any impairing level of fatigue impacting ADL's and the ability to sustain functions throughout an eight hour day?

5

11. In paragraph 35, Prudential misstates the basis for Nobile's second appeal. In the appeal letter, the following was submitted:

> "Prudential did not provide the reviewing physicians with any information regarding the duties of a gainful occupation for which it contends that Mr. Nobile is reasonable fitted by education, training or experience. Rather, as stated, Prudential asked generalized questions that address employment in any occupation. The first question asks whether Mr. Nobile has any functional impairments from July 1, 2005 forward. The question does not define functional impairments. The second question asks for restrictions and/or limitations based on functional impairments identified in question #1. Since functional impairment is not defined in the context of gainful occupational (sic), the question is not framed to illicit any useful information. The third question asks if medical records indicate significant impairment. If all the records weren't forwarded to the doctor, a complete answer cannot be furnished to this question. The fourth question asks if the records support a finding of an impairing level of fatigue for an eight (8) hour day. Again, the records weren't furnished nor was the description of the activities of this hypothetical workday furnished. Question #5 asks the doctor to compare Mr. Nobile's "self reported functional impairments with activities" demonstrated on the surveillance report and CD-rom. I have requested the CD-rom on at least two (2) occasions. I still have not received the CD-rom. At any rate, this question presupposes that the occupation would be restricted to the minimum level of activity and short time period that is indicated in the surveillance report. The sixth question asks for an explanation if the doctor was of the opinion that the claimant was not functionally impaired. Again, functional impairment is not defined as it should be when discussing same in relation to occupational duties. (Bates stamp numbers 20-35)

12. In paragraph 37, Prudential misstates the letter of Dr. LoCascio, Prudential's Vice President and Medical Director, to Dr. Goodman dated October 26, 2006. (Bates stamp numbers 6-7). Dr. LoCascio is not seeking to communicate with Dr. Goodman on a level playing field. Rather, he is asking Dr. Goodman to stipulate as to facts and to act as Prudential's expert. The remainder of Dr. LoCascio's letter states:

> I understand that you are not a vocational expert. However, I would request that from the medical perspective, you provide examples of jobs or occupations that are consistent with Mr. Nobile's demonstrated physical and psychological functional capacities.

6

My goal in communicating this information is to make you aware of the issues that most concern us in the course of functional analysis. I understand that this sometimes differs from the clinical issues your records are designed to address.

- If you agree with my summary, please date, counter-sign, and fax this letter to us
- If you wish to add, delete, or change any part of this letter, please feel free to annotate the letter or to dictate a separate reply.
- If you would like to discuss any aspect of my functional analysis, please note this as part of your reply and indicate who we can contact to set up an appointment for a telephone conversation where you can have 15 minutes of time and your chart available.
- We appreciate the value of your time and are happy to pay a fee based upon your regular office rates. If there is a fee, please specify to whom the check should be made payable, the tax ID number, the rate, and the number of hours.

We are happy to receive and consider information from you at any time. However, it would be most helpful if you could respond within two weeks of the date of this letter if at all possible.

Thank you for your time and assistance. (Bates stamp numbers 6-7)

12. In paragraph 38. Prudential states that Dr. Goodman did not respond to Dr. LoCascio's letter of October 26, 2006. In the first instance, there was nothing for Dr. Goodman to respond to as Dr. Goodman had already stated in his report of August 18, 2006 that Nobile is currently totally and permanently disabled by his coronary disease with symptoms of ischemia precipitated by any work environment in which symptoms worsening by muscolosketal disease. (Bates stamp numbers 20-22) Prudential also misstates Nobile's attorney's letter of November 16th. The letter states:

"On a separate issue, it is most inappropriate for John LoCascio, M.D., Vice President and Medical Director of Prudential Financial to communicate directly with my client's treating physician without providing a copy of this communication to either my office or my client. I have been provided with a copy of Dr. LoCascio's October 26, 2006 letter to Dr. Goodman and I am enclosing a courtesy copy for your file.

The status of this case is that the denial of benefits is on appeal. It is

7

improper for Prudential to now try to retain the insured's treating physician as an expert. Dr. Goodman is Mr. Nobile's expert and will remain so. Dr. Goodman will not be addressing the issues raised in the October 26th letter. Further, I find that Dr. LoCascio's letter contains many misstatements both as to the contents of Dr. Goodman's prior communications and also on the substantive basis for this appeal." (Bates stamp numbers 04-05)

13. In paragraph 39, Prudential again misconstrues Nobile's attorney's letter. The letter nowhere states that there was a refusal for Dr. Goodman to speak to Dr. LoCascio. Rather, the letter clearly states Dr LoCascio's letter has misstatements, both as to the contents of Dr. Goodman's prior communications and the substantive basis of this appeal, and that it is improper to seek to retain Dr. Goodman as Prudential's expert. On this basis, Prudential was advised that Dr. Goodman would not be addressing the issues in the October 26th letter. There is no foreclosure indicated in the letter as to other communications between Dr. Goodman and Dr. LoCascio.

14. In paragraph 40, Prudential infers that the standard is whether Prudential acted reasonably.

### B. PLAINTIFF NOBILE'S STATEMENT OF UNDISPUTED FACTS

1. In addition to providing medical records, Prudential provided its SOAP notes of May 12, 2005 and May 13, 2005 which state:

> May 12, 2005 - A review of gated stress test and myocardial perfusion testing 5/5/05 illustrates ee's cardiac function is compromised and ee will be limited to usual home ADL's...Current degree of ischemia necessitates a repeat cardiac test with no ischemia prior to rtw of any kind. (Bates stamp number 827).

> May 13, 2005 - "However, without treatment of ischemia, ee is physically restricted from any prolonged activity and such as would be TD from any work per medical review" (Bates stamp number 828)

2. Nobile's cardiologist, Daniel J. Goodman, M.D., rendered two reports, November 26,

2005 and August 18, 2006. (Bates stamp numbers 20-23, 164-166) Dr. Goodman has concluded in both reports that Nobile is totally and permanently disabled from working in an environment which involves physical and emotional distress. Dr. Goodman further concluded that because of Nobile's disability from his coronary disease with symptoms of ischemia precipitated by any work environment with symptoms worsening by muscular skeletal disease, Nobile is currently and totally disabled.

3. On page 2 of his report, Dr. Friedman, the cardiology reviewing physician from Reed Review Services, sets forth the documents that were sent to him to review. Neither Dr. Goodman's medical records, nor his two reports are referenced in the schedule. Further, Dr. Goodman's records and reports are not referenced in Dr. Friedman's report. This leads to the conclusion that Dr. Friedman did not have Dr. Goodman's records and reports. As part of the second appeal, this deficiency was set forth in the appeal documents. (Bates stamp numbers 61-70, 20-35)

4. Dr. Friedman finds that Nobile has functional impairments, his ischemia heart disease is a chronic problem, improvement is not likely, the surveillance CD does not define the limits of Nobile's ability to function and Nobile would need objective testing. When asked if Dr. Friedman was of the opinion that Nobile was not functionally impaired, he stated "not applicable." Dr. Friedman does not address the impact that stress from working would have on Nobile's condition. (Bate stamp numbers 61-70)

5. Prudential also had the matter reviewed by Dr. Lumpkins, a rheumatologist, from Reed Review Services. (Bates stamp numbers 54-58). Dr. Lumpkins appears to have been provided with Dr. Goodman's records. Dr. Lumpkins was provided with Nobile's expert report from Dr. Podell, a leading expert of fibromyalgia and chronic fatigue syndrome. Dr. Podell had found that Nobile's

9

fibromyalgia and chronic fatigue limits his period of productive activity to two hours per day, and prevents him from being employed. (Bates stamp numbers 168-186) Dr. Lumpkins makes no comment or reference to Dr. Podell or his report. Dr. Lupkins discredits the surveillance reports relied on by Prudential as she states that they do not cover a sufficient period of time.

6. On page 5 of the denial letter of March 21, 2006, Prudential sets forth 5 positions which it contends are viable, gainful occupations for Nobile:

| | | |
|---|---|---|
| 162.167-022 | Purchasing Manager, | 43.74/hr |
| 169.167-038 | Order Processing Manager, | 30.14/hr |
| 169.267-038 | Cost Estimator, | 29.15/hr |
| 221.167-81 | Production Coordinator, | $25,15/hr |
| 221.167-14 | Material Coordinator, | $23.06/hr |

(Bates stamp number 955)

In Nobile's second appeal dated September 27, 2006, Nobile discusses that these positions did not satisfy the policy criteria of "gainful occupation for which you are reasonable fitted by education, training or experience," and that Nobile's treating physician had rendered the opinion that Nobile's disabilities prohibit him from doing these types of work:

> The first position listed, Purchase Manager, 162.167-022, is certainly not a sedentary job. This position requires extensive managerial responsibilities, supervision of professional and technical employees, interfacing with other departments, all of which would be extremely stressful. The position would also require significant air and car travel. Prudential's SOAP note of June 10, 2005 acknowledges that Mr. Nobile is not capable of travel.
>
> The next position is an Order Processing Manager, 169.167-038. Simply, Mr. Nobile is not qualified for this position by his education, training and experience. It requires sales, marketing and sales engineering experience which Mr. Nobile does not have. It also involves supervisory duties which again are stressful and would product angina which is a disabling condition for Mr. Nobile. The next position, Cost Estimator, 169.167-038, is another position for which Mr. Nobile is not qualified. This job requires a background which would include cost accounting and sales engineering. Mr. Nobile does not have this background.

10

A Production Coordinator, 221.167-18, is not a sedentary position. The position requires manual labor and daily stressors. The last position, Material Coordinator, 221.167-14, again is not a sedentary position and requires manual labor. It is a stressful, demanding job.

(Bates stamp numbers 32-33)

7. With the exception of purchasing manager, none of the other four positions meet the income criteria set forth in the policy's definition of "gainful occupation." (Bates stamp numbers 32-33)

8. In his report of November 29, 2005, which is included as part of Nobile's first appeal, Dr. Goodman states that Nobile's angina pectoris is precipitated by any light activity or emotional stress. He further explains that the Prudential's work status form questionnaire did not directly itself to a real life situation, as it did not address pressures and stress in management, the work place, difficulty with deadlines, etc. Dr. Goodman finds that Nobile is currently totally and permanently disabled for working in an environment which involves any stress, including physical and emotional or mental stress. He states that Nobile's inducible ischemia, sub-target heart rate and obstructive coronary arteries and coronary bypasses will not change in the future and that Nobile remains totally and permanently disabled from working in any type of work environment. (Bates stamp numbers 164-166)

9. In the second appeal, Dr. Goodman's report of August 18, 2006 was provided. In this report, Dr. Goodman specifically addresses the positions that Prudential contends Nobile can perform and also addresses the report of Dr. Friedman, Prudential's reviewing cardiologist. Dr. Goodman states:

> "In reviewing these jobs and discussing them in detail with Mr. Nobile, it appears that they have certain common themes. First, it appears that travel, particularly air

travel, may be a requirement in most, if not all of them. As I have seen with other patients, business air travel can be particularly stressful, not only in terms of negotiating airports where carry-on bags and other small pieces of luggage have to be taken, but with the enhanced security and delays these are particularly emotional stressful situations. The combination of necessity of doing physical activity in using air travel, especially for short trips, and the emotional stress in using our air transportation system would mean that this would be a potentially severe situation for precipitating angina. In addition, the jobs outlined in all require management of personnel as well as preparing, reviewing and disseminating multiple types of documents with responsibilities for reviewing data and making plans. In some positions, consultations and interactions with outside entities such as clients or vendors would also be required. Some of the positions, such as the material coordinator, would require significant physical activity, as noted in the summary of the job description. All positions, of course, would require interaction with supervisors within the company. Therefore, all of the situations would require emotionally stressful interaction with personnel, both within the company and with people from outside the company. These situations would clearly place the patient at risk of significant stress and resulting ischemia. In addition, the travel would place him at risk for angina and ischemia precipitated by both emotional and physical demands, in a location where medical assistance might be unavailable.

(Bates stamp numbers 20-22)

11. Prudential also did not consider the interplay between Nobile's cardiac disability and his disability by fibromyalgia/chronic fatigue syndrome. In the first appeal, Prudential had been provided with the lengthy report of Dr. Podell, a leading expert on fibromyalgia and chronic fatigue syndrome. Dr. Podell states:

> "Mr. Nobile suffers from two main conditions and exacerbating factors. He suffers from severe fibromyalgia/chronic fatigue syndrome. The severity and pattern of his fibromyalgia/chronic fatigue syndrome prevents Mr. Nobile from working at any job full or part time, including a sedentary job.
>
> Mr. Nobile also suffers from angina pectoris/coronary artery disease. Based on my level of understanding as an internist, Mr. Nobile's angina pectoris is such that he cannot work full time at any job that exposes him to emotional distress and/or mental stress which often precipitates attacks of angina."

(Bates stamp numbers 168-186)

12

12. In October, 2006, Dr. LoCascio, Vice President and Medical Director of Prudential, was asked if he agreed with the conclusions of Dr. Friedman's medical review. Dr. LoCascio stated that the cardiac IME does not adequately address the issue of emotional stress induced ischemia. (Bates stamp numbers 841-850)

                                      Respectfully submitted,
                                      RUSSO & KIECK

                                      s/ Donna Russo
                                      Donna Russo
                                      Attorney for Plaintiff

DATED:    April 11, 2008