UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JOSEPH NOBILE,

        Plaintiff

v.

PRUDENTIAL FINANCIAL COMPANIES
and THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendants.

Civil Action No. 07-cv-1541 (HAA)

Filed Electronically

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

---

RUSSO & KIECK
39 Hudson Street
Hackensack, NJ 07601
Attorneys for Plaintiff

Donna Russo, On The Brief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

PRUDENTIAL'S MOTION FOR SUMMARY JUDGMENT
SHOULD BE DENIED AND NOBILE'S CROSS MOTION
SHOULD BE GRANTED ......................................................................................... 5

CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE(S)**

Cerotex Corp v. Cattrett, 477 US 317 (1986) .................................................................. 5

Crystal Stith v. Prudential Insurance Company of America,
356 F. Supp. 2d 431 (D.NJ. 2003) ........................................................................... 10, 11

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) ......................................... 5, 6

Heasley v. Belden & Blake Corp., 2 F.3d 1249 (3d Cir. 1993) ........................................ 6

Hersh v. Allen Products Co., 789 F.2d 230, 232 (3rd Cir. 1996) ..................................... 5

Luby v. Teamsters Health, Welfare and Pension Trust Funds et. al.,
944 F.2d 1176 (3d Cir. 1991) ........................................................................................... 6

Moench v. Robertson, 62 F. Ed 553, 566 (3d Cir. 2005) ................................................ 11

Myers v. Liberty Life Assurance Co.,
2002 U.S. Dist. LEXIS 8922 (E.D. Pa. May 20, 2002) ................................................... 11

Pinto v. Reliance Standard Life Insurance Company,
214 F. 3d 377 (3d Cir. 2000) .............................................................................. 8, 9, 10

Rita Das v. UNUM Life Insurance Company of America,
2005 U.S. Dist. LEXIS 5461 (D. Pa. 2005) ............................................................. 12, 13

Weiss v. The Prudential Insurance Company of America,
497 F. Supp. 2d 606 (D. NJ. 2007) ........................................................................ 10, 11

**FEDERAL STATUTES AND OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ......................................................................................................... 5

## PRELIMINARY STATEMENT

As set forth in the parties' respective statements of undisputed facts, there are not any factual issues before the Court. The parties are in agreement as to the facts; the parties disagree as to the weight to be given to certain facts and the application of the law. The Court is presented with three questions of law: (1) the standard of review to be applied to Prudential's denial of long term disability benefits; (2) the meaning of "gainful employment for which the insured is reasonable fitted by education, training and experience"; and (3) whether Nobile is entitled to long term disability benefits.

Prudential had initially denied Nobile's long term disability benefits for almost one year. Eventually, Prudential agreed to pay long term disability benefits for the two years under the policy provision for disability from the insured's own occupation. Upon this two year expiration and within one month of initially approving continued long term disability benefits (under the provision that required an insured to be unable to perform the duties of any gainful employment for which the insured is reasonably fitted by education, training or experience), Prudential discontinued benefits. The basis for the denial of continuing benefits is that Prudential claims that Nobile could perform work activities within a sedentary exertion level. Prudential listed five positions which Prudential claims that Nobile could perform.

The de novo standard of review should be applied to Prudential's denial of benefits. However, under either the de novo standard or the arbitrary and capricious standard, Prudential's denial of long term disability benefits should be reversed.

The policy language states:

After 24 months of payments, you are disabled when Prudential determines that due

1

> to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training and experience.
>
> . . . . . .
>
> Gainful occupation means an occupation, including self employment, that is or can be expected to provided you with an income equal to ..... at least 66.67 % of your indexed monthly earnings within 12 months of your return to work.

Prudential did obtain a review of medical records from Reed Review Services. However, Prudential did not ask the reviewing physicians to evaluate Nobile's claim pursuant to the standard set forth in the policy. Rather, Prudential asked its reviewing doctors to answer six questions which do not reflect the criteria set forth in the policy:

> 1. Based on the documentation reviewed, does Mr. Nobile have functional impairments(s) from 7/1/05 forward? If so, please note the functional impairment(s) and the evidence supporting your opinion.
>
> 2. Please identify appropriate restrictions and/or limitations (e.g. sit, stand, walk, reach, lift, carry, perform repetitive and fine motor hand activities, etc.), based on the functional impairment(s) you have noted above. Please also note the duration of any applicable restrictions and/or limitations (e.g. temporary or permanent) and the evidence supporting your opinion if not elsewhere documented.
>
> 3. If medical records are indicating significant impairment, please comment on expected treatment, duration and prognosis. (Is improvement likely?)
>
> 4. Is Mr. Nobile's self-reported functional impairment(s) and level of chronic pain consistent with his level of activity as demonstrated in the attached surveillance report and CD-rom? Please provide a detailed explanation supporting your opinion.
>
> 5. If you opine that the claimant is not functionally impaired, please provide a detailed explanation supporting your opinion.

In addition to these questions, Prudential asked the cardiology physician to respond to an additional question:

> Do the records support any impairing level of fatigue impacting ADL's and the ability to sustain functions throughout an eight hour day?

2

On second appeal, Prudential had its own employee, an internist (not a cardiologist) and Vice President and Medical Director, conduct a review to determine if he agreed with the reviewing cardiologist's conclusions. Dr. LoCascio stated that the cardiac IME does not adequately address the issue of emotional stress induced ischemia.

The significant facts supporting the denial of Prudential's motion and its grant of Nobile's cross motion are:

1. On May 13, 2005, Prudential approved long term disability benefits to Nobile under its definition of gainful employment;

2. Within one month, June 15, 2005, Prudential reversed its grant of benefits. There was no change in Nobile's medical condition and his doctor had confirmed that his treatment plan was "risk factor modification, anti-ischemic meds".

3. Prudential did not have any medical review to support its denial of benefits on June 15, 2005;

4. In January and February, 2006, Prudential first sought a medical review;

5. Prudential wrote to the reviewing doctors that Prudential had determined that Nobile "no longer met the definition of disability from any gainful occupation."

6. Prudential did not provide Nobile's treating cardiologist's reports to Reed Review Services for a cardiac review;

7. The rheumatologist, who conducted the review for the independent reviewing service, did not consider the report of a noted physician of fibromyalgia and chronic fatigue syndrome;

8. This rheumatologist did not consider chronic fatigue syndrome in her analysis;

9. The reviewing physicians were not asked to evaluate Nobile's records in accordance with the contractual language of the policy; rather, they were asked to respond to specific questions that did not fall within the policy language. These reviewing physicians were told that Prudential has already determined that Nobile no longer meets the definition of disability;

10. Nobile's cardiologist rendered two reports, including one report specifically

3

addressing the work positions that Prudential contends that Nobile could do, and finds that because of his disability, Nobile cannot work in these positions and in that Nobile could not be in a position that has emotional or physical stress because of his cardiac condition;

11. Prudential's reviewing cardiologist finds that Nobile has functional impairments, his ischemia heart disease is a chronic problem, improvement is not likely, the surveillance CD does not define the limits of Nobile's ability to function and Nobile would need objective testing. Prudential's Vice President and Medical Director found that this cardiac review does not adequately address Nobile's medical condition of emotional stress induced ischemia;

12. Prudential's reviewing rheumatologist discredits the surveillance reports relied on by Prudential as they do not cover a sufficient period of time;

13. Prudential did not consider the interplay between Nobile's cardiac condition and his fibromyalgia/chronic fatigue syndrome;

14. In addition to Nobile not being able to work in the posision because of his medical conditions and also not being reasonably fitted by education, training or experience for the 5 positions set forth by Prudential, 4 of these 5 positions do not satisfy the income criteria set forth in the insurance policy. Nobile is not able to work in the other position, purchase manager, because the job would require air travel, which Prudential has acknowledged that Nobile can't do.

## PRUDENTIAL'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AND NOBILE'S CROSS MOTION SHOULD BE GRANTED

Summary judgment is the appropriate remedy in this case. The facts are not disputed. The only issues are legal issues. The moving party has the burden of proof. Fed. R. Civ. P. 56(c). Hersh v. Allen Products Co., 789 F.2d 230, 232 (3rd Cir. 1996); Cerotex Corp v. Cattrett, 477 US 317 (1986). It is respectfully submitted that Prudential has not met its burden and its motion for summary judgment should be denied. It is further respectfully submitted that Nobile has established that he is entitled to summary judgment on his cross-motion for the reversal of denial of benefits.

In order for the standard of review of Prudential's decision to be other than de novo, its policy must have language setting forth that it has full discretion to interpret the policy. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). Prudential's policy does not contain this language. (Consistent with established principles of trust law, we hold that a denial of benefits challenged under 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Id.)

Prudential will most likely argue that the policy language "when Prudential determines" is a grant of discretionary authority. It is respectfully submitted that same does not confer the discretion to Prudential especially when determining the meaning of ambiguous terms such as "gainful occupation for which you are reasonably fitted by education, training or experience." There is nothing in the policy language to give Prudential discretionary authority to construe these terms. In the within matter, in addition to Nobile not being disabled from working, there is also the issues

of what type of work Prudential can seek that he do i.e., does he have to do menial jobs.; what do the terms "fitted by education, training and experience" mean and do the positions suggested by Prudential satisfy these terms. <u>Firestone Tire & Rubber Co. Bruch, supra., Luby v. Teamsters Health, Welfare and Pension Trust Funds et. al.</u>, 944 F.2d 1176 (3d Cir. 1991).

De novo review means that the Court reviews the administrative record and makes its own determination without consideration of deference to the plan administrator's findings. <u>Firestone Tire & Rubber Co. Bruch, supra., Luby v. Teamsters Health, Welfare and Pension Trust Funds et. al.</u>, 944 F.2d 1176 (3d Cir. 1991).

In <u>Heasley v. Belden & Blake Corp.</u>, 2 F.3d 1249 (3d Cir.1993), the Court addressed questions concerning the interpretation and application of an ERISA plan when the plan did not have specific language granting discretionary authority. The plan at issue provided that the carrier "evaluate the proposed admission for certification of medical necessity...". The issue was whether this language gave the carrier the discretion to determine if a medical procedure was experimental and excluded from coverage. The Court applied the principle of *contra proferentum* and found that ERISA did not pre-empt same. The Court stated:

> The principle of *contra proferentum* derives from the recognition that insurance policies are almost always drafted by specialists employed by the insurer. In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence. Moreover, once the policy language has been drafted, it is not usually subject to amendment boy the insured, even if he sees an ambiguity; an insurer's practice of forcing the insured to guess and hope regarding the scope of coverage requires that any doubts be resolved in favor of the party who has been placed in such a predicament. <u>Id</u>. 1257.

The Court, applying *contra proferentum*, held that the plan did not grant the carrier discretion

6

in determining which procedures were experimental because the Plan and the evidence was ambiguous. Id. 1258. The same is true in the within case.

Even if the Court deems that Prudential's long term disability policy gives Prudential discretion, the review procedure would be basically the same because under the facts of this case, Prudential's determination should be given little deference because in addition to its financial interest in denying benefits, Prudential acted with bias.

Prudential, within one month, reversed its decision to continue benefits. Prudential did not have any medical evidence to support its reversal. Prudential, when retaining an independent review service, told the reviewing doctors "up front" that Prudential had already determined that Nobile wasn't disabled. Prudential didn't provide the reviewing physicians with the contractual language by which Nobile was to be evaluated. Prudential didn't provide Nobile's cardiologist's reports to the reviewing cardiologist; Prudential gave questions to the reviewing doctors to answer which questions did not conform to the policy language. On second appeal, Prudential had its employee, the Vice President and Medical Director, conduct a review. This doctor was asked whether he agreed with the reviewing cardiologist's conclusion. Prudential's doctor wrote to Nobile's cardiologist and asked him to agree on inaccurate statements, asked him to render an expert opinion as to those jobs or occupations that Mr. Nobile may be able to do and offered to compensate the doctor. Contrary to Prudential's statement, Nobile's cardiologist wasn't prohibited from contacting Nobile's cardiologist. Rather, Prudential was told that it was inappropriate to write to the treating physician for an expert opinion based on inaccurate facts. Prudential could have revised its communications to the doctor, schedule a conference with the doctor and Nobile, etc. Prudential did not do so and did not have this matter reviewed by an independent physician on the second appeal.

7

The leading case is Pinto v. Reliance Standard Life Insurance Company, 214 F. 3d 377 (3d Cir. 2000). In Pinto, the insurance carrier determined the eligibility for benefits and paid those benefits out of its own funds. Herein, Prudential does the same.

In Pinto, the policy had the discretionary language allowing for a review standard of arbitrary and capricious. However, the Court expressed serious concern with this review standard in light of the apparent conflict that existed in the decision making and funding. The Court held that with such a conflict, the reviewing standard must place intensified scrutiny to match the degree of conflict.

The Pinto case involved the same issue as in the within matter - whether the plaintiff was totally disabled by her cardiac condition entitling her to long term disability benefits. Like Nobile, the plaintiff had to avoid high stress situations. The Court found that the heightened review standard allowed it to take notice "... of discrete factors suggesting that a conflict may have influenced the administrator's decision." Id. 379. The Court considered the questionable reversal of the initial decision to grant benefits (herein, on May 13, 2005, Prudential had decided to afford Nobile benefits under the "gainful occupation" standard only to reverse itself 4 weeks later). Second, the Court considered that the carrier's final report credited the evidence favorable to the denial while inadequately explaining why it rejected contrary evidence; the same is true as to Prudential's review herein. Finally, the carrier had relied on a physician who was not a cardiologist; likewise, Prudential's expert, its own Vice President and Medical Director, is not a cardiologist. The Court found that the carrier interpreted a medical finding of a sedentary lifestyle meant that the plaintiff could perform sedentary work. Prudential makes the same argument. The carrier took the physical limitations to mean the limits of plaintiff's potential i.e., the doctor said that plaintiff could not lift

ten pound items to mean that she regularly lift less weighty items. Prudential takes the same approach. The plaintiff's physician, like Nobile's cardiologist, took the position that she must continue medical therapy, have a sedentary life style and avoid high stress situations and that she is "unfit to perform any task or job in the labor market."

The Pinto Court held that heightened scrutiny is required when an insurance company is both the administrator and funder. Id. 387. The Court looked to the process by which the carrier reached its denial of benefits. The Court placed importance on the reversal of the carrier's initial determination although it had not been provided with additional medical information; the carrier's reliance on some of plaintiff's records but rejecting this doctor's conclusion that the plaintiff was totally disabled; and whenever the carrier was at a crossroad it chose to decide disfavorably to the plaintiff. The Court stated: "Taking all of these procedural anomalies into account, we find ourselves on the far end of the arbitrary and capricious 'range,' and we examine the facts before the administrator with a high degree of skepticism."[1] Id. 394.  The Court then discredited the administrator's argument that its decision was not arbitrary and capricious because there were an equal amount of experts on each side. The court pointed out that the doctors retained by the carrier did not have the same contact with the plaintiff as her own expert, her treating physician. Her doctor's conclusion that her condition could severely worsen under stress and activity and although she might be able to persist in an occupation for some time and had the basic motor skills, the risk of plaintiff working was too great. The carrier gave no explanation for rejecting this portion of

---

[1] The Court also found that if it had applied the de novo standard of review, it would have concluded that Reliance made an incorrect determination because plaintiff had provided credible evidence from her long time treating cardiologist that she was totally disabled for cardiological reasons and that it was only Reliance's doctor, that had much less opportunity to perform tests and examine her than her own doctor, who concluded that plaintiff wasn't disabled. Id. 393.

9

plaintiff's doctor's report. The carrier was also more accommodating to its expert's report than the plaintiff's doctor. The Court concluded:

> "For these reasons, a fact finder could conclude that Reliance Standard's decision to credit its doctors over [plaintiff's doctors] was the result of self dealing instead of the result of a trustee carefully exercising its fiduciary duties to grant Pinto the benefits due her under the insurance plan." Id. 394.

The New Jersey District Courts have reviewed Prudential's claim procedure on at least two occasions. The parties apparently did not dispute the application of the heightened standard of review and the Courts found that Prudential's denial of benefits was arbitrary and capricious. Crystal Stith v. Prudential Insurance Company of America, 356 F. Supp. 2d 431 (D.NJ. 2003); Weiss v. The Prudential Insurance Company of America, 497 F. Supp. 2d 606 (D. NJ. 2007).

In Crystal Stith, supra., the Court denied Prudential's motion for summary judgment and granted plaintiff's summary judgment motion. The Court found no bias and applied the "modicum of additional scrutiny" test. The plaintiff had a cystitis condition and related pain. Her doctor furnished his records and reports. In his last record, he found that because of her disabling pelvic pain, urinary frequency and urgency that the plaintiff was unable to perform any job. Plaintiff's previous doctors' records had confirmed plaintiff's diagnosis. Prudential hired an independent specialist in urology to review the records and surveillance tapes. This doctor found that pain was subjective and that there was no objective evidence of pain syndrome. This doctor also concluded that plaintiff could perform sedentary work and was not disabled within the meaning of the policy. The Court found that Prudential's denial of benefits was arbitrary and capricious. The Court ignored the surveillance tape and found that Prudential's argument that a plan administrator is free to ignore a diagnosis of disability when the doctor relies on subjective evidence is incorrect. Prudential had

relied on <u>Myers v. Liberty Life Assurance Co.</u>, 2002 U.S. Dist. LEXIS 8922 (E.D. Pa. May 20, 2002). In <u>Myers</u>, the doctor's diagnosis was based on subjective complaints of pain. The Court found that the plaintiff in <u>Crystal</u> <u>Stith</u> had medical records supporting an objective diagnosis, that Prudential's conclusion that plaintiff was not disabled could not be reconciled with the medical records, and that Prudential's choice in relying on its reviewing doctor's conclusory findings in light of the conflicting medical opinions was erroneous. The Court found: "the decision maker may not, however, adopt a consultant's opinion in the face of overwhelming evidence to the contrary, without some explanation for doing so."

The Court held:

Therefore, in conclusion, the Defendant's decision to deny Plaintiff benefits was not supported by substantial evidence here and was thus arbitrary in nature. Defendant relied solely upon the conclusory, unsupported, and unexplained opinion of a doctor who never examined the patient and instead, overlooked the various and multiple opinions of Plaintiff's treating physicians and medical records of severe pain associated with the condition from which Plaintiff indisputably suffered. Defendant's decision resulted from its unexplained disregard for credible contradictory evidence from Plaintiff's own physician, Dr. Pontari. Such self-serving action must be considered arbitrary and capricious.

In <u>Weiss</u>, <u>supra</u>, the issue was the proper interpretation of "regular occupation and whether Prudential was able to rely on the broad category of "teacher" when the plaintiff was food service instructor to special education students. The Court found that there was nothing in Prudential's record to show it had analyzed the physical demands of a food service instructor. The Court, citing <u>Moench v. Robertson</u>, 62 F. Ed 553, 566 (3d Cir. 2005), found that the Court is to consider the following factors when determining whether an interpretation of a plan was reasonable:

(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4)

11

whether the [relevant entities have] interpreted the provision at issue consistently; and (5)whether the interpretation is contrary to the clear language of the Plan.

The Court held that Prudential's denial of benefits was based on an unreasonable interpretation of the term "regular occupation". The Plan's language was "material and substantial duties of your regular occupation." The Court found that had the policy used the word "teacher" that Prudential's decision may have been upheld. However, since the policy used a more generalized definition"regular occupation" Prudential's interpretation was not reasonable under the heightened standard of review and that facts demonstrated that Prudential's interpretation was unreasonable because its interpretation was contrary to the goals of a long term disability benefits policy and contrary to the policy's clear language.

Herein, Prudential's policy uses the term "gainful occupation . Prudential's policy states:

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

. . . . . . . . . .

Gainful occupation means an occupation including self employment, that is or can be expected to provide you with an income ...equal to at least 66.67% of your indexed monthly earnings within 12 months of your return to work.

Prudential incorrectly used the category "any gainful occupation" in its letters to the reviewing physicians. The Prudential policy requires the gainful occupation to be one that the insured is "reasonably fitted by education, training or experience" and provides an income of 66.67% if the indexed monthly earnings in one year, which in Nobile's case would be $6,667.

In Rita Das v. UNUM Life Insurance Company of America, 2005 U.S. Dist. LEXIS 5461 (D. Pa. 2005), the issue was whether UNUM abused its discretion when finding that the plaintiff was able and qualified to work, based on her education, work experience and training, in the alternative

job positions identified by UNUM, these positions satisfying the income criteria. Plaintiff had attempted to argue that she was entitled to long term disability benefits, not because she was disabled from performing the identified job positions, but because such job positions were not available based on a mediocre search by the plaintiff. The Court correctly held that an employee is not entitled to benefits simply because she could not find a job in the identified positions. In the within matter, the issue is not the unavailability of positions identified by Prudential; rather, it is that Nobile, because of his medical conditions cannot work, and that Nobile is not "reasonably fitted by education, training and experience" to perform the identified positions and same do not satisfy the income criteria.

In Rita Das, supra., the Court found that disability policies have three categories: disability from performing own occupation; disability from performing any work or any occupation; and a hybrid provision - any gainful occupation for which the employee is reasonably fitted by education, training or experience. The within matter, like the policy in Rita Das, falls in hybrid category. In the hybrid type, the insurer is required to identify the insured's "transferable job skills". Since the policy does not define "fitted" the Court looked to its common definition which is suitable. Under the hybrid language, the carrier must identify positions which the plaintiff has sufficient education, training or experience to work in the alternate occupations. In the within matter, Prudential used the "any gainful occupation" category when communicating with its reviewing physicians. In addition to ignoring that Nobile cannot work because of his health conditions, as set forth by :Nobile's doctors, Prudential also did not consider whether Nobile was "fitted" for the identified positions and that the identified positions did not satisfy the income criteria of the policy.

The Rita Das court also succinctly summarized the review process under the heightened

13

standard:

> "Procedural anomalies can appear in a variety of ways. Examples of procedural predilection that invite a higher standard of review include: relying on the opinions of non-treating over treating physicians without reason, <u>Kosiba, 384 F.ed 58, 67-68</u>: failing to follow a plan's notification provisions, <u>Lemaire v. Hartford Life & Accident Ins. Co.,</u> 69 Fed. Appx. 88, at 92, No. 02-2533, 2003 WL 21500334 **4; conducting self-serving paper reviews of medical files, <u>Lemaire, 69 Fed. Appx. At 92, 2003 WL21500334</u>, at **4; relying on favorable parts while discarding unfavorable parts in a medical report. <u>Pinto, 214 F.3d at 393-94;</u> denying benefits based on inadequate information and lax investigatory procedures, <u>Friess v. Reliance Std. Life Ins. Co.,</u> 122 F. Supp. 2d 566, 574-75 (E.D. Pa. 2000) (Brody, J.); and, ignoring the recommendations of an insurance company's own employees that benefits be reinstated. <u>Pinto, 214 F. 3d at 394.</u> In situations where a financial conflict of interest is compounded by evidence of procedural bias, a 'significantly heightened' standards applies. <u>Kosiba, 384 F.3d at 68.</u>

Herein, all these procedural predilections that invite a higher standard of review apply: Prudential relied on reviewing physicians' reports over Nobile's own doctors without reason. The reviewing cardiologist didn't have Nobile's cardiologist's reports. These reviewing doctors found functional impairments, discrediting the surveillance videos, and were not provided with or did not consider pertinent medical records. The rheumatologist did not consider Nobile's chronic fatigue syndrome. Neither reviewing doctor considered the interplay between Nobile's cardiac condition and his fibromyalgia/chronic fatigue syndrome. Prudential's Medical Director and Vice President conducted a second review, even though he was neither a cardiologist or rheumatologist. He did not conduct an independent review, but was asked if he agreed with the reviewing cardiologist. Further, the Medical Director and Vice President of Prudential was certainly not independent and his review was self-serving. Prudential did not consider Nobile's doctors' opinions of disability. Prudential reversed its grant of continued benefits within one month and without any medical basis in support of its position. Prudential also had a clear financial interest in the outcome.

14

Based on the above, under either the de novo standard or the arbitrary and capricious standard, Prudential's motion for summary judgment should be denied. For the same reasons, Nobile's cross motion for summary judgment should be granted. Nobile also seeks attorneys fees under ERISA section 502 and will submit an affidavit of services upon the Court's direction.

## CONCLUSION

For all the foregoing reasons. Nobile respectfully requests the denial of Prudential's motion for summary judgment, the grant of his cross motion for summary judgment and attorneys fees and costs.

                                  Respectfully submitted.

                                  RUSSO & KIECK

                                  s/  Donna Russo
                                  DONNA RUSSO
                                  Attorney for Plaintiff

DATED:   April 11, 2008