<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | :|  |
|---|---|---|
| JOSEPH NOBILE, | : | |
| | : | Civ. No. 07-1541(GEB) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>**BROWN, Chief District Judge**</u>

  This matter comes before the Court upon: (1) the motion for summary judgment of Defendant The Prudential Insurance Company of America ("Defendant" or "Prudential") [Docket # 10]; and (2) the cross-motion for summary judgment of Plaintiff Joseph Nobile ("Plaintiff" or "Nobile") [Docket # 12]. Each party opposes the other's motion for summary judgment [Docket # 12, 14]. The Court has considered the parties' submissions and decided these motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will deny both motions.

**I. BACKGROUND**

  Plaintiff, who has a history of cardiac and rheumatological ailments, alleges that Prudential wrongfully terminated his long-term disability ("LTD") benefits in violation of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1001, *et*

*seq*. (Compl.) [Docket #1]. The basic facts of this case are not disputed.[1] Prior to February 3, 2003, Plaintiff was employed by Smith Industries, Inc. ("Smith") as a materials director. (Def.'s 56.1 S. at ¶ 1.) Smith holds a group LTD insurance policy (the "Policy") issued by Prudential. (*Id.* At ¶ 3.) In pertinent part, the Policy provides that a claimant is eligible to receive LTD benefits for 24 months after "the claimant is unable to perform the material and substantial duties of his regular profession due to the claimant's sickness or injury." (*Id.* at ¶ 5.) After 24 months, the Policy's definition of "disability" changes. In order to receive LTD benefits after 24 months, a claimant must be "unable to perform the duties of *any gainful occupation* for which the claimant is reasonably fitted by education, training or experience." (*Id.* At ¶ 6.)(emphasis added) The parties agree that the term "any gainful employment" is reasonably defined as: "an occupation, including self-employment, that or can be expected to provide the claimant with an income equal to at least 66.67% of the claimants indexed monthly earnings within 12 months of returning to work." (*Id.*)

On February 3, 2003, Plaintiff claimed total disability from: (1) coronary artery disease (including blocked arteries, angina and shortness of breath); (2) chronic chest pain due to a prior bypass operation; and (3) Fibromyalgia (specifically joint and muscle pain). (*Id.* at ¶ 2.) As a Smith employee covered by the Policy, Plaintiff submitted a claim for LTD benefits to Prudential. (*Id.* at ¶¶ 3, 13.) Plaintiff's claim was initially denied by Prudential on the basis that Plaintiff's cardiac status was stable, his anxiety/depression was mild, and Plaintiff's pain medications had either been reduced or discontinued over time. (*Id.* at ¶ 14.) Plaintiff appealed

---

[1] Plaintiff generally does not dispute the facts set forth in Prudential's L. Civ. R. 56.1 Statement of Undisputed Material Facts. (Pl.'s 56.1 S. at ¶ 1.) As such, this background section summarizes the facts set forth by Prudential with additional references where appropriate.

this denial and asserted that he was no longer capable of travel, walking the factory floor, or between offices - activities which Plaintiff's position with Smith required to varying degrees. (*Id.* at ¶ 17.) Following Plaintiff's appeal, Prudential reversed its initial decision and granted Plaintiff net monthly benefits of $2,810.59 for 24 months.[2] (*Id.*)

In March 2005, in anticipation of the expiration of the 24 month "regular profession" period under the Policy, Prudential began an assessment of Plaintiff's condition. (*Id.* at ¶ 18.) That assessment initially involved reviewing a questionnaire that Plaintiff had completed, and reviewing the results of a background investigation performed by a third-party consulting group retained by Prudential. (*Id.* at ¶¶ 18, 19.) Following this initial assessment, Prudential informed Plaintiff via letter dated May 13, 2005 that he, "continues to qualify for LTD benefits under the 'any gainful employment occupation' standard, to take effect as of June 4, 2005, due to his cardiac problems." (*Id.* at ¶ 20.) However, one month later, in a letter dated June 13, 2005, Prudential informed Plaintiff that his benefits under the Policy would be terminated as of June 30, 2008. (*Id.* at ¶ 24.)

Prudential asserts that three pieces of information acquired after May 13, 2005 resulted in the decision to terminate Plaintiff's LTD benefits: (1) a "Work Status Form" completed by Plaintiff's cardiologist, Dr. Daniel Goodman, in which Dr. Goodman indicates that Plaintiff can, "(i) sit continuously for 8 hours; (ii) occasionally lift up to 10 pounds, carry up to 10 pounds, climb, bend, kneel and crawl; and (iii) frequently balance and reach"; (2) clandestine video

---

[2] Plaintiff's gross benefit award under the Policy was $5,559.59. Pursuant to the terms of the Policy, that amount was reduced by the value of Plaintiff's monthly Social Security benefits, which totaled $2,745. (Def.'s 56.1 S. at ¶ 17.) The parties' submissions indicate that Plaintiff was declared permanently disabled by the Social Security Administration and continues to receive monthly Social Security benefits.

surveillance of Plaintiff engaging in various activities including, "(i) picking up his daughter from elementary school; (ii) grocery shopping at A&P, including pushing the grocery cart and unloading bags of groceries in his car; (iii) watering plants in his front yard; and (iv) walking in his driveway"; and (3) a vocational assessment performed by Vocational Rehabilitation Specialist Thomas Virgilio that yielded a number of jobs Plaintiff can allegedly perform. (*Id.* at ¶¶ 21, 22.) In light of this evidence, Prudential determined that Plaintiff failed to satisfy the "any gainful occupation" standard for continued LTD benefits under the policy. (*Id.* at ¶ 24.)

Plaintiff appealed Prudential's termination of his LTD benefits for the first time on December 16, 2005. (*Id.* at ¶ 26.) In support of that appeal, Plaintiff submitted the reports of Dr. Daniel J. Goodman, M.D. and Dr. Richard N. Podell, M.D. Each of these reports was prepared after the respective physician physically examined Plaintiff. (A.R. at 164-66; 168-186.) Dr. Podell, who examined Plaintiff regarding his Fibromyalgia and chronic fatigue syndrome ("CFS"), opined on November 1, 2005 that, "as a result of the severity of [Plaintiff's] CFS and Fibromyalgia complaints and symptoms he is unable to work at any job including a sedentary one." (A.R. at 177.) Dr. Goodman, Plaintiff's cardiologist, opined on November 29, 2005 that as a result of various cardiac ailments, Plaintiff is "totally and permanently disabled for work in any type of work environment." (A.R. at 166.)

In response to Plaintiff's appeal, Prudential sent Plaintiff's file to Reed Review Services ("Reed") for additional review. At Reed, Plaintiff's file was reviewed by two physicians who specialized in cardiology and rheumatology, respectively. It is undisputed that neither of Reed's specialists personally examined Plaintiff, and their evaluations were based upon the material provided by Prudential. Dr. Mark Friedman, M.D., a cardiologist affiliated with Reed, reviewed

Plaintiff's file and opined that Plaintiff was functionally impaired from July 1, 2005 with respect to his cardiac status. (A.R. at 68.) Dr. Friedman essentially concurred with Plaintiff's physical capabilities and limitations as previously noted by Dr. Goodman in Prudential's "Work Status Form." (A.R. at 69.) With regard to the video surveillance of Plaintiff, Dr. Friedman noted that "the activity level demonstrated on the surveillance CD is consistent with short periods of light activity. The surveillance CD does not define the limits of the patient's ability to function. The patient would need objective testing such as a treadmill test to determine his current level of exercise tolerance." (A.R. at 70.) Finally, Dr. Friedman noted that Plaintiff's "cardiac status has remained stable." (*Id.*) Dr. Tanya Lumpkins, M.D., a rheumatologist affiliated with Reed, reviewed Plaintiff's file and opined that, "the medical record fails to support a physical impairment based upon rheumatologic diagnoses from [July 1, 2005] forward." (A.R. at 58.) Based upon the opinions of Drs. Friedman and Lumpkins, as well as the vocational specialist's previous determination that there were gainful occupations Plaintiff could perform, Prudential denied Plaintiff's first appeal in a letter dated March 21, 2006. (Def.'s 56.1 S. at ¶ 34.)

Plaintiff appealed Prudential's second denial of benefits on September 27, 2006, and asserted that Prudential's determination was incorrect for several independent reasons. (*Id.* at ¶ 35.) In response to Plaintiff's second appeal, Prudential forwarded the case to Dr. John LoCascio, M.D., Prudential's Vice President and Medical Director. (Def.'s 56.1 S. at ¶ 37.) As part of his review, Dr. LoCascio attempted to contact Dr. Goodman, Plaintiff's cardiologist, via letter dated October 26, 2006. (Pl.'s 56.1 S. at ¶¶ 12-14; Def.'s 56.1 S. at ¶¶ 37-40.) In his October 26, 2006 letter, Dr. LoCascio briefly summarized Plaintiff's history of cardiac issues, and apparently sought Dr. Goodman's opinion as to what types of jobs Plaintiff could perform. It

5

is undisputed that Dr. Goodman did not respond to Dr. LoCascio's letter, and the two never conferred regarding Plaintiff's case.[3]  Subsequently, in a letter dated December 26, 2006, Prudential denied Plaintiff's second and final appeal, and explained that, "[b]ased upon all of the information available at this time, we continue to uphold our original denial determination as the vocational and medical information available support that Mr. Nobile did not meet the definition of disability. . . ."  (A.R. at 938-940)   Prudential concluded the December 26, 2006 letter by informing Plaintiff that their termination of his LTD benefits was final.  (A.R. at 940)

Having exhausted Prudential's administrative appeal process, Plaintiff filed the instant complaint on August 2, 2007 in this Court pursuant to ERISA.  Plaintiff alleges that Prudential's termination of his LTD benefits is a breach of contract.  (Compl.) [Docket #1.]  As a remedy, Plaintiff seeks both the accrued and future LTD benefits Prudential allegedly owes him under the Policy.  (*Id.*)  Further, Plaintiff seeks attorney fees and any other equitable relief allowable under ERISA.  (*Id.*)  In the motions *sub-judice*, each party asserts that they are entitled to judgment as a matter of law based upon the undisputed facts of this case [Docket # 10, 12].

**II.    DISCUSSION**

    **A.  Summary Judgment Standard**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine

---

[3]    The parties dispute why Dr. Goodman did not respond to Dr. LoCascio's letter.  (Pl.'s 56.1 S. at ¶¶ 12-14; Def.'s 56.1 S. at ¶¶ 37-40.)  That dispute does not impact on the Court's resolution of these motions.

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

    B.  Application

        **1.  There Is A Material Issue Of Fact Whether Prudential's Termination Of Plaintiff's Benefits Was Arbitrary and Capricious**

In their various submissions, the parties spend considerable time arguing whether this Court should review Prudential's termination of Plaintiff's LTD benefits under a *de novo* standard of review, or a more deferential standard.  The Court need not decide that question, because assuming *arguendo* that the most deferential standard of review proposed by Prudential applies, the termination of Plaintiff's benefits presents a genuine issue of material fact that precludes summary judgment for either party.

The parties agree that Prudential is a conflicted ERISA fiduciary because under the Policy, Prudential both decides whether Plaintiff is eligible for benefits, and is responsible for paying any benefits owed.  Prudential argues that this Court should apply a "heightened arbitrary and capricious" standard of review in accordance with the decision of the United States Court of Appeals for the Third Circuit in *Pinto v. Reliance Standard Life Insurance Company*, 214 F.3d 377 (3d Cir. 2000), and its progeny.  In *Pinto*, the Third Circuit adopted a "sliding scale" method

to determine the appropriate standard of review when a court considers the decision of a conflicted ERISA fiduciary. Under the *Pinto* "sliding scale" approach, a court must elevate the deferential arbitrary and capricious standard of review, "intensifying the degree of scrutiny to match the degree of the conflict." *Pinto* 214 F.3d at 379. The elevation of the deferential arbitrary and capricious standard creates the so-called "heightened arbitrary and capricious" standard of review.

 Prudential asserts that "the only evidence of a conflict is that Prudential is the claims administrator and pays the LTD benefits from general revenue. No other extrinsic evidence, bias or actual conflict exists on the part of Prudential exists." (Def.'s Summ. J. Br. at 22.) As such, Prudential argues that "this Court should engage in no more than a modicum of additional scrutiny." (*Id.*) Prudential urges this Court to apply the heightened arbitrary and capricious standard of review utilized by the Third Circuit in *Smathers v. Multi-Tool, Inc. et al.*, 298 F.3d 191 (3d Cir. 2002). (*Id* at 24.) In *Smathers*, the Third Circuit explained that "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Smathers* 298 F.3d at 199 (quoting *Orvosh v. Program of Group Ins. For Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000)). Additionally, the *Smathers* court noted that "any deference we might ordinarily afford [the insurer's] decision will be tempered due to [the insurer's] conflict of interest. *Id.* at 200.

 Assuming *arguendo* that the deferential heightened arbitrary and capricious standard of review articulated above applies in this case, there is a genuine issue of material fact whether Prudential's termination of Plaintiff's benefits was arbitrary and capricious. This is so because

the administrative record does not contain sufficient medical evidence to support Prudential's position that Plaintiff's cardiac condition allows him to safely perform any job, sedentary or otherwise. In his report dated November 29, 2005, Dr. Goodman, Plaintiff's treating cardiologist, noted the following:

> When I first met [Plaintiff] in January of 2005, he appeared disabled. This was based, from my point of view, on his angina pectoris that was precipitated by any light activity or emotional stress and his fibromyalgia. Clearly there was an interplay amongst the various factors. . . .
>
> . . . .
> It is clear that in most positions of employment, especially any type of managerial situation, work stress test is more related to emotional stress than physical stress. It is clear from the objective evaluation of the patient's condition, as documented on his stress test that revealed ischemia at a less than target heart rate, that the patient would be particularly susceptible to time and emotional stressors in the workplace . . . In addition, I am sure that the patient's fibromyalgia, in causing discomfort and activity limitations, would only exacerbate the stress on his heart and, therefore, lower the anginal threshold causing him more marked limitations resulting in an inability to perform activities and complete responsibilities based on his cardiac problem.
>
> . . . .
> In summary, it is clear that Mr. Nobile is currently totally and permanently disabled for working in an environment which involves any stress. For the patient, this would include not only physical stress test, but also any emotional or mental stress . . . I do not see any fundamental change that will occur in the patient's condition in the future that will change his condition significantly and, therefore, I would regard him as totally and permanently disabled for work in any type of work environment.

(A.R. at 165-166.) Thus, Plaintiff's treating cardiologist was of the opinion that Plaintiff's cardiac condition, particularly when exposed to "emotional stress," rendered Plaintiff unable to perform any job.

The documents that Prudential relies upon as medical evidence in terminating Plaintiff's benefits, however, do not adequately address the emotional stress factors that Dr. Goodman deemed critical, so as to permit judgment to be entered in favor of Prudential as a matter of law.

9

Indeed, Dr. Friedman, the cardiologist affiliated with Reed who reviewed Plaintiff's file, was also of the opinion that Plaintiff had "functional impairments from 07/01/2005 with respect to his cardiac status." (A.R. at 68) Although Dr. Friedman opined that Plaintiff did not suffer from a level of "fatigue" that would prevent Plaintiff from sustaining "functions" (both terms are undefined in the opinion) throughout an eight hour day, a review of Dr. Friedman's February 14, 2006 opinion reveals a total absence of any reference to the effect of emotional stress factors on Plaintiff's cardiac status. Moreover, Dr. LoCascio, in his letter to Dr. Goodman dated October 26, 2006, recognized a "reasonable recognition of the need to avoid extraordinary stressors." (A.R. at 6.) However, Dr. LoCascio found Dr. Goodman's assertion that Plaintiff could not work in any position because of emotional stress "hard to support in an individual who . . . is functioning so well at home and in the community (doing chores such as shopping gardening, managing his own finances, and safely driving an automobile), and has had no formal psychiatric assessment of stress management . . ." (*Id.*) Thus, it appears that Dr. LoCascio, who never examined Plaintiff, disagreed with Dr. Goodman's assessment because Plaintiff was capable of doing certain domestic chores and had never had a formal psychiatric assessment.

      Based upon this evidence, the Court concludes that a reasonable factfinder, considering all the evidence and reasonable inferences to be drawn from it, could decide that Prudential's termination of Plaintiff's benefits was or was not arbitrary and capricious under the standards established by *Pinto* and *Smathers*. Prudential relies upon the report of Dr. Friedman and the letter Dr. LoCascio sent to Dr. Goodman to support their position that Plaintiff was medically capable of working in sedentary jobs. Neither of these documents, however, taken separately or in tandem, form sufficient "substantial evidence" for Prudential's termination of Plaintiff's

benefits as a matter of law under the heightened arbitrary and capricious standard of review. Because there is a genuine issue of material fact present in this case, the Court must deny summary judgment to both parties.  In light of this conclusion, the Court need not address the parties alternate arguments.

### III.    CONCLUSION

For the reasons expressed above, the Court will DENY the motions for summary judgment of both parties [Docket # 10, 12].  An appropriate form of order accompanies this memorandum opinion.

Dated: December 30, 2008

          /s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.